IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| AISHA PHILLIPS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22-CV-112 |
| | ) | |
| WOLFSPEED, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiff Aisha Phillips sued her former employer, defendant Wolfspeed, Inc., asserting claims of employment discrimination and retaliation. The undisputed evidence shows that Wolfspeed terminated Ms. Phillips's employment because she committed time card fraud, not because of her pregnancy. And Ms. Phillips has not made out a claim of retaliation or shown that Wolfspeed failed to accommodate her pregnancy. Summary judgment for Wolfspeed is proper.

I.  **Overview of the Facts**

The following facts, as stated here and elsewhere in this Order as they become relevant, are either undisputed or viewed in the light most favorable to Ms. Phillips, the nonmoving party. *See Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

Ms. Phillips began working for Wolfspeed[1] as a semiconductor manufacturer in December 2018. Doc. 26-2 at 5, 8;[2] Doc. 26-6 at ¶ 3. She worked twelve-hour shifts, from 7:00 a.m. to 7:00 p.m., three or four days a week. Doc. 26-2 at 5.

Per Wolfspeed policy, Ms. Phillips received 80 minutes of paid time off during her shifts: 60 minutes for lunch and another 20-minute paid break. *Id.* at 6. Wolfspeed had a time clock abuse policy which prohibited "any misrepresentation of actual time spent working." Doc. 26-3 at 9. This included "clocking in and then not performing work duties" and "leaving for a break without clocking out." *Id.* Ms. Phillips was aware of Wolfspeed's policies and that they applied to her. Doc. 26-2 at 11; Doc. 26-4 at 33–34.

As early as spring 2019, some of Ms. Phillips' coworkers reported that she was leaving the work area or on her personal cell phone during work time, complaining that this increased the workload for other employees. Doc. 26-5 at ¶¶ 8–9; Doc. 26-4 at 42. Ms. Phillips' supervisors considered more frequent observation of Ms. Phillips' workplace behavior and bathroom breaks. *See* Doc. 26-4 at 42–43. Ms. Phillips' supervisor Sean Oates also met with her on April 29, 2019, *see* Doc. 26-2 at 8, Doc. 26-5 at ¶¶ 6, 9, and while the parties disagree about the subject of that meeting, it is undisputed

---

[1] Wolfspeed was formerly known as "Cree, Inc.," *see* Doc. 9 at ¶ 5, and much of the evidence on the record refers to Cree instead of Wolfspeed. For simplicity, the Court refers to the defendant as Wolfspeed, even when citing to evidence referring to the defendant as Cree.

[2] The Court has used the pagination appended by the CM-ECF system for this and other deposition cites, not the internal pagination used by the court reporters transcribing the deposition.

2

that Ms. Phillips received and signed Wolfspeed's policies again.  Doc. 26-4 at 34; Doc. 26-2 at 8.

In the summer of 2019, Ms. Phillips told Mr. Oates and her former supervisor, Frank Beatty, that she was pregnant.  *See* Doc. 26-2 at 10.  Complaints by co-workers that Ms. Phillips took excessive breaks while clocked in continued after Ms. Phillips' informed Mr. Oates of her pregnancy.  Doc. 26-6 at ¶ 7.  Mr. Oates began to observe her restroom breaks more closely.  Doc. 26-2 at 5–6.

In August, Ms. Phillips missed some work as a result of complications with her pregnancy.  *See* Doc. 26-2 at 23–24; Doc. 29-3; Doc. 29-4; Doc. 29-5.  In late August, Ms. Phillips complained to Kristen Alexander in the employee resources department that Mr. Oates was "being nit-picky" and that she was "being targeted" over attendance and break issues.  Doc. 29-7 at 2; *see also* Doc. 26-4 at ¶¶ 8–11.  Over the next month, she made similar complaints about Mr. Oates to others in management.  Doc. 29-10 at 4; Doc. 26-3 at 61, 72.  Mr. Oates issued a "Corrective Action Notice" in early September 2019 for Ms. Phillips' attendance issues over the previous six months.  Doc. 26-3 at 28–29.  Ms. Phillips refused to sign the notice, noting her "need to speak to HR . . . about this supervisor" and referencing her pregnancy and medical conditions.  *Id.* at 29.

Also in September, Joe Williams, Ms. Phillips' department's "Team Lead," recommended that Mr. Oates conduct a time clock fraud investigation.  Doc. 26-6 at ¶¶ 3, 9; Doc. 26-5 at ¶ 11.  It is undisputed that the investigation uncovered that Ms. Phillips was spending significant amounts of time clocked in and not working, *see* Doc. 26-5 at

3

¶ 13, Doc. 29 at 6–12, and on September 25, 2019, Wolfspeed terminated Ms. Phillips' employment. Doc. 26-5 at ¶¶ 15–17.

At the time she was terminated, Ms. Phillips had a meeting scheduled with the employee resources department to discuss potential accommodations for her pregnancy and complaints she had made over the summer and fall about Mr. Oates monitoring her bathroom breaks. *See* Doc. 26-4 at ¶ 16; Doc. 26-3 at 60.

Other facts shown by the evidence will be discussed as they become relevant.

## II. Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In analyzing a summary judgment motion, courts "tak[e] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry*, 652 F.3d at 531. The moving party has the initial burden of demonstrating the absence of any material issue of fact; once the moving party meets its initial burden, the non-moving party must come forward with evidentiary material demonstrating the existence of a genuine issue of material fact requiring a trial. *Ruffin v. Shaw Indus., Inc.*, 149 F.3d 294, 300–01 (4th Cir. 1998) (per curiam); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III. Discussion

### A. Sex (Pregnancy) Discrimination Claim – Title VII

Ms. Phillips does not contend that she has direct evidence of pregnancy discrimination; she proceeds instead under the *McDonnell Douglas* burden-shifting

4

Case 1:22-cv-00112-CCE-LPA   Document 32   Filed 05/16/23   Page 4 of 15

framework. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *see also Jefferies v. UNC Reg'l Physicians Pediatrics*, 392 F. Supp. 3d 620, 626 (M.D.N.C. 2019) ("Absent direct evidence of intentional discrimination, claims under Title VII are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*."). To establish a prima facie case of pregnancy discrimination, Ms. Phillips must show that:

> (1) she is a member of a protected class; (2) her employer took an adverse action against her; (3) she had been fulfilling her employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination, including because the employer left open the position or replaced the plaintiff with someone outside the protected class.

*Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649–50 (4th Cir. 2021); *see also Randa v. Garland*, 855 F. App'x 874, 876 (4th Cir. 2021) (per curiam) (unpublished).

"Once a plaintiff makes out a prima facie case, the burden shifts to the employer" to show a nondiscriminatory reason for its actions. *Sempowich*, 19 F.4th at 650. "If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation was actually a pretext for discrimination." *Id.* (cleaned up).

Ms. Phillips has not made a prima facie case of sex discrimination because the undisputed evidence shows that Ms. Phillips was not meeting Wolfspeed's legitimate expectations at the time it terminated her employment. Even viewed in the light most favorable to Ms. Phillips, the evidence shows that she committed time card fraud by failing to clock out when she took breaks and that Wolfspeed discharged her for this reason, not because she was pregnant.

For example, it is undisputed that on September 3, 2019, Ms. Phillips clocked in to work at 6:57 a.m., clocked out for lunch at 12:00 p.m., clocked back in at 1:00 p.m., clocked out at 3:32 p.m. for her break, clocked in at 3:52 p.m. at the end of her break, and clocked out at 7:05 p.m. at the end of the day. *See* Doc. 26-2 at 17; Doc. 26-3 at 47. Wolfspeed paid her for twelve hours of work based on the presumption that she was working at all times she was clocked in. *See* Doc. 26-2 at 17. As Ms. Phillips acknowledges in her response brief, Wolfspeed's security footage shows that she spent at least 103 additional minutes away from her work station and not working that day, "spread out across seven breaks." Doc. 29 at 7. She did not record any of these breaks on her timesheet, *see* Doc. 26-3 at 47, in direct violation of Wolfspeed's time clock abuse policy. *Id.* at 9; *see also* Doc. 26-2 at 11 (showing that Ms. Phillips knew of this policy).

Similarly, Ms. Phillips reported and Wolfspeed paid her for twelve hours of work on September 12 and 16. Doc. 26-2 at 17; Doc. 26-3 at 48. By Ms. Phillips' own calculations, she spent "96 minutes clocked in and not working . . . over the course of eight breaks" on September 12, Doc. 29 at 9, and 103 minutes on September 16. *Id.* at 12.

"When an employee is aware of an employer's policy and violates it, [s]he has not met the employer's legitimate expectations." *Jones v. Dole Food Co.*, 827 F. Supp. 2d 532, 547 (W.D.N.C. 2011), *aff'd*, 473 F. App'x 270 (4th Cir. 2012) (per curiam) (unpublished); *see also Graves v. Bank of Am., N.A.*, 54 F. Supp. 3d 434, 440 (M.D.N.C. 2014) (quoting the same); *Fulp v. Columbiana Hi Tech, LLC*, No. 16-CV-1169, 2018 WL 1027159, at *9 (M.D.N.C. Feb. 21, 2018) (quoting the same); *Rodgers v. Eagle All.*, 586

F. Supp. 3d 398, 441 (D. Md. 2022). Because Ms. Phillips has admitted that she committed time card fraud in violation of Wolfspeed policy, she was not meeting the legitimate expectations of her employer and cannot establish a prima facie case of sex discrimination.

Ms. Phillips contends that Wolfspeed exaggerated her violations and that she was working during some of the other times identified by Wolfspeed as fraudulent. But the undisputed fact remains that she was clocked in and not working for substantial periods of time, even if the specific extent is in dispute.

Ms. Phillips also points to Mr. Oates' closer examination of her bathroom breaks and absences after she announced her pregnancy and to the fact that Wolfspeed terminated her employment just a few weeks after she missed work for pregnancy-related complications. She asserts that an inference of discrimination arises from the close temporal connection. But even assuming that she has met the fourth element of the prima facie case and produced evidence sufficient to infer discrimination, that does nothing to establish the third element or to undermine Wolfspeed's undisputed evidence that she was not meeting legitimate expectations. Co-workers had complained about Ms. Phillips' excessive breaks as early as April 2019, Doc. 26-5 at ¶¶ 8–9, Doc. 26-6 at ¶¶ 5–6, Doc. 26-4 at 42, and by the fall of 2019 Mr. Williams was "receiving daily complaints from [Ms.] Phillips' co-workers" that she "was continuing to be off the floor or otherwise not working while clocked in." Doc. 26-6 at ¶ 7. Ms. Phillips submitted time cards claiming to be working when she was not. She has pointed to no evidence of another employee who similarly falsified time cards whose employment Wolfspeed did

7

not terminate. She has not met her burden to show that she was meeting her employer's legitimate expectations at the time Wolfspeed terminated her employment and cannot make out the third element of the prima facie case.

It is undisputed that Wolfspeed knew Ms. Phillips' was pregnant, *see, e.g.*, Doc. 26-4 at ¶¶ 8, 11, 13, Doc. 29-4, Doc. 29-7, and that at least some of Ms. Phillips' issues related to her breaks and attendance were related to health problems associated with the pregnancy, of which Wolfspeed supervisors were aware. *See* Doc. 29-4; Doc. 29-5; Doc. 26-2 at 11, 15, 24; *see also* Doc. 29-11. But an employee who needs extra breaks as a result of pregnancy is not entitled to submit a time card falsely claiming to be working when she is not.

Finally, Ms. Phillips contends that the time card fraud investigation is not evidence that she failed to meet the third element of her prima facie case but rather is Wolfspeed's proffered legitimate nondiscriminatory reason for terminating her, which, she says, is a pretext for discrimination. Doc. 29 at 16. This evidence is relevant to both points, but the Court only reaches the "legitimate nondiscriminatory reason" issue if Ms. Phillips has evidence showing that she was meeting Wolfspeed's legitimate expectations. *See Sempowich*, 19 F.4th at 650 ("Once a plaintiff makes out a prima facie case, the burden shifts to the employer" to show a nondiscriminatory reason for its actions). As previously discussed, she has not done this, and thus she has not established a prima facie case of sex discrimination under the *McDonnell Douglas* burden-shifting framework.[3]

---

[3] Even if the Court reached the legitimate nondiscriminatory reason issue and the pretext issue, the result would be the same, as the discussion *infra* about the retaliation claim shows.

8

The Court will grant Wolfspeed's motion for summary judgment on Ms. Phillips' Title VII discrimination claim.

### B. Retaliation – Title VII

Ms. Phillips does not have direct evidence of retaliation and is again proceeding under the *McDonnell Douglas* burden-shifting framework. *See Walton v. Harker*, 33 F.4th 165, 177 (4th Cir. 2022). Under this framework, Ms. Phillips is first required to show that "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Id.* (cleaned up); *see also Randa*, 855 F. App'x at 876; *Sempowich*, 19 F.4th at 653. If she makes a prima facie case, the burden shifts to Wolfspeed "to articulate a legitimate nondiscriminatory or nonretaliatory justification for its action." *Beverly v. Becerra*, No. 20-1724, 2022 WL 636626, at *2 (4th Cir. 2022) (per curiam) (unpublished). If Wolfspeed does this, then the burden shifts to Ms. Phillips to "prove by a preponderance of the evidence that [Wolfspeed's] purportedly neutral reasons were a pretext for discrimination or retaliation." *Id.*

"[T]he causation standards for establishing a prima facie retaliation case and proving pretext are not identical. Rather, the burden for establishing causation at the prima facie stage is less onerous." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 251 (4th Cir. 2015) (cleaned up). Ultimately, "retaliation plaintiffs are limited to traditional principles of but-for causation and must be able to prove that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 249 (cleaned up).

9

It is undisputed that Ms. Phillips has established the first two elements of her prima facie case: she engaged in a protected activity when she complained to the employee resources department about Mr. Oates' behavior, and Wolfspeed terminated her employment. For the purposes of this motion, the Court will assume without deciding that Ms. Phillips has established the third element, a causal connection between the two events based on temporal proximity, and that she has made a prima facie case of retaliation.

Once Ms. Phillips makes the prima facie case, the burden shifts to Wolfspeed to offer a legitimate nondiscriminatory reason for terminating her employment. Wolfspeed has provided undisputed evidence that it terminated Ms. Phillips' employment because she committed time card fraud, not in retaliation for her complaints about discrimination. *See supra* Part III.A. To survive summary judgment, Ms. Phillips must show by a preponderance of the evidence that Wolfspeed's reason is pretext by "establish[ing] both that [Wolfspeed's] reason was false and that retaliation was the real reason for the challenged conduct." *Foster*, 787 F.3d at 252 (cleaned up). In other words, Ms. Phillips must offer proof that "retaliation was a but-for cause" of her termination. *Id.*; *see also Lashley v. Spartanburg Methodist Coll.*, __ F.4th __, 2023 WL 2977754, at *6 (4th Cir. 2023).

Ms. Phillips has not done so. She contends that Mr. Oates investigated her for time card fraud because she complained about him to employee resources but offers no evidence to support this claim beyond her speculation. Mr. Williams, her department's "Team Lead," has testified without contradiction that he recommended the fraud

10

investigation because Ms. Phillips' co-workers were complaining about her not working while on the clock, Doc. 26-6 at ¶¶ 7–9, and there is no evidence indicating that Mr. Williams knew Ms. Phillips had complained about Mr. Oates.

Ms. Phillips argues that the timing of the investigation is itself evidence of retaliation. Mr. Oates began the investigation on September 16, Doc. 26-5 at ¶ 12, four days after Ms. Phillips emailed Ms. Alexander and Ms. Carter in the employee relations department and accused them of ignoring her discrimination complaints about Mr. Oates. *See* Doc. 29-10 at 4. Both Ms. Alexander and Ms. Carter were involved in the investigation. *See id.* at 2; Doc. 29-16 at 2. And Ms. Phillips contends that "the results of the investigation do not match the video evidence," Doc. 29 at 24, and that Mr. Oates, Ms. Alexander, and Ms. Carter "inflated the numbers to support their discriminatory termination" of her employment. *Id.* at 25.

This temporal connection is probably enough to support causation at the prima facie stage, but it does not establish that "retaliation was a but-for cause" of her termination. *Foster*, 787 F.3d at 252; *see id.* at 251 ("[T]he causation standards for establishing a prima facie retaliation case and proving pretext are not identical. Rather, the burden for establishing causation at the prima facie stage is less onerous." (cleaned up)). The temporal proximity between her complaints to the employee resources department and the investigation is, on its own, "insufficient to show pretext." *Thivierge v. Int'l Paper Co.*, No. 21-CV-1526, 2022 WL 19039092, at *11 (D.S.C. Nov. 21, 2022) (cleaned up); *see also Williams v. Fairfax Cnty.*, No. 21-CV-598, 2022 WL 2346615, at *12 (E.D. Va. June 29, 2022). The claimed discrepancies between the video footage and

11

the results of the investigation do not undermine the undisputed fact, which Ms. Phillips herself admits, that she spent about 100 minutes on several days clocked in and not working. *See* Doc. 29 at 5–12, 24–25. And Wolfspeed has provided undisputed evidence that other employees were complaining about Ms. Phillips' behavior on a daily basis, *see* Doc. 26-6 at ¶ 7, that Mr. Oates terminated another employee on the same day as Ms. Phillips for the same reason, and that this employee had not made any complaints about discrimination beforehand. Doc. 26-5 at ¶ 20. Even viewing the evidence in the light most favorable to her, Ms. Phillips has not met her burden to show that Wolfspeed's proffered nondiscriminatory reason is pretext and that retaliation was the but-for cause of her termination. The Court will grant Wolfspeed's motion for summary judgment on this claim.

### C. Disability Discrimination – ADA

The Americans with Disabilities Act prohibits employers from "discriminating against a qualified individual on the basis of disability in regard to the hiring, advancement, or discharge of employees." *Lashley*, 2023 WL 2977754, at *9 (cleaned up) (quoting 42 U.S.C. § 12112(a)). Ms. Phillips proffers no direct evidence of disability discrimination and again proceeds under the *McDonnell Douglas* framework. *See Bostick v. Cabarrus Cnty. Dep't of Health & Hum. Servs.*, No. 18-CV-1042, 2022 WL 1686903, at *4 (M.D.N.C. May 26, 2022). To establish a prima facie case of disability discrimination under this framework, Ms. Phillips must show "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3)

12

Case 1:22-cv-00112-CCE-LPA     Document 32     Filed 05/16/23     Page 12 of 15

that her employer discharged her . . . because of her disability." *Id.* (quoting *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015)).

Assuming without deciding that Ms. Phillips has shown that she was disabled under the ADA and was qualified to be a semiconductor manufacturer, she has not met her burden to show that Wolfspeed discharged her because of her disability. The undisputed evidence shows that it discharged her for time card fraud. *See supra* pages 5–8. Summary judgment is appropriate on this claim.

### D. Failure to Accommodate – ADA

To prevail on a failure-to-accommodate claim under the ADA, "a plaintiff must show (i) she was disabled, (ii) the employer had notice of her disability, (iii) she could perform the essential functions of her position with a reasonable accommodation, and (iv) the employer refused to make such accommodation." *Lashley*, 2023 WL 2977754, at *9 (quoting *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 378 (4th Cir. 2022)). Assuming without deciding that Ms. Phillips has established the first three elements, her failure to accommodate claim still fails because she has not shown that Wolfspeed refused to accommodate her.

"Implicit in the fourth element [of a failure to accommodate claim] is the requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." *Bostick*, 2022 WL 1686903, at *8 (cleaned up and quoting *Haneke v. Mid-Atl. Cap. Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005) (per curiam) (unpublished)). "The duty to engage" in this interactive process "is generally triggered when an employee communicates to her employer her disability and her desire

13

for an accommodation for that disability." *Bostick*, 2022 WL 1686903, at *8 (cleaned up and quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346–47 (4th Cir. 2013)). The process "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3); *see also Bostick*, 2022 WL 1686903, at *8. "During the interactive process, an employer may request and require that the employee provide sufficient medical documentation." *Allen v. City of Raleigh*, 140 F. Supp. 3d 470, 485 (E.D.N.C. 2015) (cleaned up); *see also Bostick*, 2022 WL 1686903, at *9; *accord Lashley*, 2023 WL 2977754, at *10 (noting that it can be reasonable for an employer to ask for health details to evaluate potential accommodations).

Ms. Phillips has offered evidence that she asked for accommodations about breaks. *See* Doc. 29-8; Doc. 29-11. The undisputed evidence also shows that Wolfspeed asked for information from her doctor before discussing accommodations with her, *see* Doc. 26-4 at ¶¶ 9–10, 14–15, Doc. 29-8 at 2, Doc. 29-10 at 4, and that as soon as Ms. Phillips provided the note, Wolfspeed scheduled a meeting on Ms. Phillips' next work day to discuss accommodations.[4] Thus, the undisputed evidence shows that Ms. Phillips and Wolfspeed were "engage[d] in an interactive process to identify a reasonable accommodation" when Wolfspeed discharged Ms. Phillips. *Bostick*, 2022 WL 1686903,

---

[4] Ms. Phillips brought a doctor's note to work on September 20, *see* Doc. 29-10 at 3, Doc. 29-11 at 2–3, Doc. 26-3 at 60, 62–63, and "asked to schedule a follow-up meeting" with Ms. Alexander. Doc. 26-4 at ¶ 16; *see* Doc. 29-10 at 3. Because Ms. Phillips left work early on September 21 and did not report for work on September 22, Ms. Alexander scheduled the follow-up meeting with Ms. Phillips for the afternoon of September 25, Ms. Phillips' next day of work. Doc. 26-4 at ¶ 16.

14

at *8 (cleaned up). The Court will grant Wolfspeed's motion for summary judgment on this claim.

IV. Conclusion

Viewed in the light most favorable to Ms. Phillips, the evidence shows that she repeatedly failed to clock out when she was not working, for periods in excess of an hour and a half on several workdays and in violation of Wolfspeed's applicable policies, and that Wolfspeed ultimately terminated her employment because she committed this time card fraud. The evidence also shows that Wolfspeed was in the process of working with Ms. Phillips to find a reasonable accommodation for her pregnancy when it terminated her employment for other reasons. Summary judgment for Wolfspeed is proper.

It is **ORDERED** that the defendant's motion for summary judgment, Doc. 24, is **GRANTED**. Judgment will be entered separately.

This the 16th day of May, 2023.

_____
UNITED STATES DISTRICT JUDGE